**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Case No. 24-CR-0109(3) (DLF)** |
| **NORMAN MORRIS,** | **:** | |
| | **:** | |
| *Defendant.* | **:** | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

Defendant Norman Morris ("Morris"), by and through his undersigned counsel, respectfully submits his Supplemental Memorandum in Aid of Sentencing and states as follows:

**I.     BACKGROUND**

Mr. Norris was tried before a jury that convicted him on Count 1, Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or More of PCP and declared itself unable to reach a verdict as to Count 19, Unlawful Distribution of a Mixture and Substance Containing a Detectable Amount of Fentanyl.

Mr. Morris filed his Memorandum in Aid of Sentencing and objections to the Pre-Sentence Report, arguing, *inter alia*, that the Pre-Sentence Report recommendation that he be considered a career offender was in error and that certain alleged acts of drug activity should not be considered relevant conduct with respect to the offense of conviction.  On February 18, 2026, the parties appeared for sentencing.  The Court found that Mr. Morris had joined the PCP conspiracy in February 2024 and therefore was not a career offender because his prior convictions had been discharged more than fifteen years prior.  (Tr. 33:13 – 15; 34:10 – 35:2).

In response to that finding, the government argued that Mr. Morris had engaged in a fentanyl transaction with co-defendant Lamont Langston in December of 2023.  (Tr. at 39:22 –

40:8); *see also* Gov Exh. 342.  If that were the case, the government posited, then the December 2023 event should be considered relevant conduct to the offense of conviction, thus reviving the career offender designation (Tr. 42:3 – 42:12) and possibly affecting the drug amount calculation.

The government also argues that Mr. Morris' attempts at collecting Langston's drug debts show that "Morris and Langston had a long-standing agreement to distribute drugs." Gov. Memo. at 4.  However, this argument ignores the fact that Langston clearly noted that the debts were owed to him.  *See* Exh. 1 (highlighted portions).  That is, the debtors were his customers, not Mr. Morris'.  Additionally, the government argues that because Codefendant Jamar Bennett told the undercover officer he sold PCP to that Langston was a fentanyl source means that Langston supplied Mr. Morris.  There is no evidence that Langston supplied Mr. Morris.

## II.    THE DECEMBER 20, 2023, EVENT

The government argues that the December 20, 2023, event is relevant conduct to the offense of conviction.  It supports this argument with Government Exhibit 342, a pole camera video depicting the area outside of Mr. Morris' home on 58th Street, NE on December 20, 2023. The sequence of events is as follows:

- 12:16:36 pm[1] – a gray car pulls up and parks on the right side, across the street from Mr. Morris' house.

- 12:17:08 pm – a red SUV pulls up and parks behind the gray car.  The driver of the red SUV gets out of the vehicle, walks to Mr. Morris' house and then returns to the red SUV.

---

[1] The time refers to the time stamp on the video.

- 12:19:05 pm – a man, identified as Ricardo Brown, walks out of Mr. Morris' house and walks to the red SUV.

- 12:19:11 pm – a gray SUV pulls up and parks behind the red SUV.

- 12:19:32 pm – Ricardo Brown approaches the driver of the red SUV and hands him something white with his left hand.  At the same time, Mr. Morris exits the gray SUV, walks to Ricardo Brown and hands him what appears to be a cup in a cup carrier.  Mr. Morris then walks to the passenger wide of the original gray car.  The gray SUV drives away.

- 12:19:51 pm – Ricardo Brown begins to walk back to Mr. Morris' house, while Mr. Morris remains at the gray car.

- 12:20:33 pm – Ricardo Brown again walks away from Mr. Morris' house and approaches the passenger side of the red SUV

- 12:20:50 pm – Mr. Morris walks away from the gray car and approaches the driver's side of the red SUV, appearing to speak with the driver.

- 12:21:12 pm – the gray car pulls off and drives away.

- 12:21:50 pm – a white car identified as Lamont Langston's vehicle, pulls up from the opposite direction and parks across the street from the red SUV.

- 12:21:52 pm -  Ricardo Brown enters the passenger side of the red SUV.

- 12:22:12 pm – Mr. Morris walks over to the driver of the white car and appears to retrieve something from the driver, which he then appears to hand to the driver of the red SUV.

- 12:22:25 pm – the white car pulls away and Mr. Morris enters his car and drives away. The red SUV remains on the scene.

From what is depicted in the video, it is evident even under a preponderance standard that it cannot be determined that a drug transaction took place. Ricardo Brown was Mr. Morris' stepfather. The video raises the question if Mr. Morris engaged in a drug transaction with the driver of the red SUV, why would Ricardo Brown, who had himself already given something to the driver of the red SUV (12:19:32 pm), get into the passenger side of the red SUV and remain in the vehicle. The scenario is just as likely that the driver of the red SUV knew Mr. Morris and Brown and were engaging in friendly conversation. What was allegedly obtained from Langston and given to the driver of the red SUV cannot be determined and should not be considered.

## III.    RELEVANT CONDUCT

Sentencing Guideline § 1B1.3(a)(2) states:

(a) CHAPTERS TWO (OFFENSE CONDUCT) AND THREE (ADJUSTMENTS).—Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

* * *

(2) solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

U.S.S.G. § 1B1.3(a)(2). *See also United States v. Jackson*, 161 F.3d 24, 27 (D.C. Cir. 1998).

Several circuit courts have distinguished between the terms "same course of conduct" and "common scheme or plan" by recognizing that a "common scheme or plan" requires that acts "be connected together by common participants or by an overall scheme"

4

whereas the "same course of conduct" concept looks to "whether the defendant repeats the same type of criminal activity over time." *United States v. Hill*, 79 F.3d 1477, 1482 (6th Cir. 1996) (quoting *United States v. Silkowski*, 32 F.3d 682, 687 (2nd Cir. 1991)).

### A.  Common Scheme or Plan

The Guidelines state that "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*."  U.S.S.G. § 1B1.3(a)(2), App. Note. 5(B)(i); *United States v. Wishnesfsky*, 7 F.3d 254, 256 (D.C. Cir. 1993).  The guideline only applies if "there are distinctive similarities between the offense of conviction and the remote conduct" and cannot be used to sentence a defendant based on "isolated, unrelated events that happen only to be similar in kind." *Hill*, 79 F.3d at 1482 (citations omitted).

Upon reviewing Exhibit 342, it cannot be said that it involves common victims, common accomplices, common purposes, or similar *modus operandi* as the offense of conviction.  First, there are no common victims.  Second, with respect to common accomplices, the government alleges that Langston provided fentanyl to Mr. Morris to sell to the driver of the red SUV.  However, it is not possible to say, even under a preponderance standard, whether Langston was the driver of the white car or whether Langston, if he were the driver of the white car, handed any drugs to Mr. Morris.  Similarly, it is not possible to determine whether Mr. Morris handed any drugs to the occupants of either the gray car or the red SUV.  And, if drugs were distributed, it is not possible to say what drug was involved.  Third, there is no common purpose.  The PCP conspiracy dedicated itself to selling significant quantities of PCP – mainly to an undercover officer.  The December event involved an unknown object given to unknown

persons.  Profit cannot be shown to be a common purpose.  There is no evidence that Mr. Morris

sought to profit from the PCP conspiracy because his only possible demonstrated involvement in

the PCP conspiracy is his alleged collecting of PCP at Langston's direction after Langston's

arrest.  Similarly, assuming *arguendo* that in the December 2023 event Mr. Morris got drugs

from Langston to give to the driver of the red SUV, Mr. Morris appears to hand to Langston

what he received from the driver prior to completing the exchange.  Therefore, there is no

indication that Mr. Morris profited from the alleged transaction.  Finally, there is no similar

*modus operandi* in that the PCP conspiracy primarily involved Langston supplying PCP to

Sanker, who stored the PCP before providing it to Bennett.  In the December event, if the Court

were to credit the government's version of what occurred in the video (Exh. 342), at most

Langston gave and unknown amount of fentanyl to Mr. Morris, who then appears to hand it to

the driver of the red SUV.

While a factor to consider is whether there was a common accomplice, in this

case it cannot be said that is the case because it is not clear by a preponderance of the evidence

that Mr. Morris and Langston engaged in a narcotics transaction on December 20, 2023.  And,

because the other factors are not present, it cannot be determined that the December event and

the offense of conviction were part of a common scheme or plan.

### B.  Course of Conduct

Application Note 5(B)(ii) states that:

> Offenses that do not qualify as part of a common scheme or plan may nonetheless
> qualify as part of the same course of conduct if they are sufficiently connected or
> related to each other as to warrant the conclusion that they are part of a single
> episode, spree, or ongoing series of offenses. Factors that are appropriate to the
> determination of whether offenses are sufficiently connected or related to each
> other to be considered as part of the same course of conduct include the degree of
> similarity of the offenses, the regularity (repetitions) of the offenses, and the time

6

interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required.

1B1.3(a)(2), App. Note. 5(B)(ii).  Section 1B1.3 "is designed to take account of a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing.  Thus, when illegal conduct does exist in discrete, identifiable units apart from the offense of conviction, the Guidelines anticipate a separate charge for such conduct." *United States v. Maxwell*, 34 F.3d 1006, 1010 (11th Cir. 1994) (citations omitted).  The Court must consider whether "there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind."  *Id.* at 1011, *citing United States v. Sykes*, 7 F.3d 1331, 1336 (7th Cir. 1993).  *See United States v. Rhine*, 583 F.3d 878, 887 (5th Cir. 2009) (factors to consider in making this determination include the degree of similarity of offenses, the regularity of the offenses and the time interval between the offenses).

There are no "distinctive similarities" between the PCP conspiracy and the December 20, 2023, event that indicate they are part of a "single course of conduct." "Rather, the two offenses appear to be isolated, unrelated events that happen only to be similar in kind." *Maxwell*, 34 F.3d at 1011 (citations omitted) (rejecting a separate cocaine deal as relevant conduct to the offense of conviction, a Dilaudid conspiracy).  As the Court in *Maxwell*, noted, "We do not think that two offenses constitute a single course of conduct simply because they both involved drug distribution." *Id.*  Here, the offense of conviction is participation in a PCP conspiracy that the Court has determined Mr. Morris joined in February 2024.  The December 20, 2023, event involved, if at all, an unknown drug, an unknown quantity and unknown persons. The only similarity would be the alleged involvement of co-defendant Langston.  Thus, the conduct is not similar to the offense of conviction.  With respect to the regularity of the offenses,

7

Mr. Morris had, at most, temporary involvement in the PCP conspiracy on February 29, 2024. Thus, it cannot be said that Mr. Morris regularly dealt in PCP as it is alleged he did with fentanyl. With respect to the time interval between the offenses, the December event occurred two months prior to Mr. Morris' alleged involvement in the PCP conspiracy. The December event involved different participants, a different location, and a different operational plan. They do not share similar offenses, regular offenses or a temporal connection. Thus, the two events are not part of the same course of conduct.

IV.    **CONCLUSION**

The Court should find that the PCP conspiracy and the December 20, 2023, were not part of the same course of conduct or a common scheme or plan as the offense of conviction and hold that Mr. Morris is not a career offender.

Dated: Washington, DC
March 18, 2026                                    Respectfully submitted,

**BALAREZO LAW**

/s/ A. Eduardo Balarezo

By:    _____
A. Eduardo Balarezo
DC Bar # 462659
400 Seventh Street, NW
Suite 306
Washington, DC  20004
Tel. (202) 639-0999
Fax. (202) 639-0899
E-mail:  aeb@balarezolaw.com

*Counsel for Norman Morris*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 18th day of March 2026, I caused a true and correct copy of the foregoing Defendant's Supplemental Memorandum In Aid of Sentencing to be delivered via ECF to the Parties in this case.

/s/ A. Eduardo Balarezo

_____

A. Eduardo Balarezo